UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JENNIFER D.,

        Plaintiff,

    v.                                 **DECISION AND ORDER**

                                            20-CV-1214S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

    1.    Plaintiff Jennifer D.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

    2.    Plaintiff protectively filed her applications with the Social Security Administration on September 5, 2017, for her Title XVI application, and September 27, 2017, for her Title II application. Plaintiff alleged disability beginning February 27, 2017, due to status post cerebrovascular accident ("CVA"); osteoarthritis of hips, ankles, and feet; lumbar degenerative disc disease; and obesity. Plaintiff's applications were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

    3.    On September 25, 2019, ALJ William Weir held a hearing at which Plaintiff—represented by counsel—and Vocational Expert Michele Erbacher appeared

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

and testified. (R.² at 32-65.)  At the time of the hearing, Plaintiff was 36 years old with a high school education (R. at 24).  Her past relevant work was as a pharmacy technician (R. at 24).

4.     The ALJ considered the case *de novo* and, on November 13, 2019, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.³  (Docket No. 1.)

5.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 14, 15.)  Plaintiff filed Notice of No Reply on March 2, 2022 (Docket No. 16), at which time this Court took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion is **denied**, and Defendant's Motion is **granted**.

6.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is

---

²Citations to the underlying administrative record are designated as "R."

³The ALJ's November 13, 2019, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical

> or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

      10.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

      11.     Plaintiff filed her claim after March 27, 2017, hence the new rules for evaluating medical opinions apply, 20 C.F.R. §§ 404.1520c, 416.920c.

      12.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful

activity since February 27, 2017, onset date. (R. at 14.) At Step Two, the ALJ found that Plaintiff has the following severe impairments: status post CVA; osteoarthritis of hips, ankles, and feet; lumbar degenerative disc disease; and obesity. Id. at 14-17. Plaintiff also claims as severe impairment her headaches and fibromyalgia. As for her headaches, the ALJ found that there was no evidence that this condition (alone or with others) caused more than minimal work-related limitations (R. at 14-15). As for her fibromyalgia, the ALJ found that the medical record did not document a history of widespread pain and repeated manifestations of six or more fibromyalgia symptoms. The ALJ attributed the fibromyalgia symptoms to arthritis, but this analysis was not provided by a medical source. (R. at 15.)

13. At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

14. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, finding that Plaintiff can stand or walk for one hour total during the workday at 15-minute intervals. Plaintiff can tolerate one change per day in general work setting or task. She cannot use ladders, ropes, or scaffolds. She can occasionally use ramps or stairs. She cannot work in close contact with more than 12 persons at a time (R. at 18).

15. At Step Four, based upon the opinion of the vocational expert the ALJ found Plaintiff is unable to perform any past relevant work. (R. at 24.) At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 25.) Since Plaintiff cannot perform substantially all the

exertional demands of sedentary work, the ALJ posed hypotheticals to the vocational expert of a claimant with Plaintiff's age, education, and work experience. The expert opined that this hypothetical claimant could perform as a callout operator or touch-up screener (R. at 25). Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 25.)

16. Plaintiff argues that the RFC determination is not supported by substantial evidence because her physical and mental impairments eroded her occupational base for unskilled work (Docket No. 14, Pl. Memo. at 2). She claims that the ALJ did not properly consider evidence of her fibromyalgia and headaches. She also contends that ALJ failed to evaluate and explain the medical opinions in the record, thus the RFC was not supported by substantial evidence. (Docket No. 14, Pl. Memo.) For the reasons that follow, this argument is rejected.

17. First, Plaintiff seeks remand because the ALJ erred at Step Two in determining the severity of her impairments or considering in subsequent steps the impairment (even if not severe) in combination with other impairments (Docket No. 14, Pl. Memo. at 13). The impairments not correctly considered are her fibromyalgia and headaches (id. at 14-19, 20-24).

18. Symptoms of fibromyalgia include pain, tenderness, and stiffness in joints, capsules, and adjacent structures, with systemic symptoms including fatigue, insomnia, and depression, Taber's Cyclopedic Medical Dictionary 670 (16th Ill. Ed. 1989).

19. Pursuant to SSR 12-2p, to diagnose fibromyalgia there must be at least eleven positive tender points on physical examination, with positive tender points found bilaterally and above and below the waist (Docket No. 14, Pl. Memo. at 14; Docket No. 15, Def. Memo. at 8). Another way to prove having fibromyalgia is a history of widespread

pain, repeated manifestation of six or more symptoms (such as fatigue, cognitive problems, depression, or anxiety), and exclusion of other disorders as the cause, SSR 12-2p (Docket No. 15, Def. Memo. at 8).

20.  At Step Two, the ALJ concluded that the record did not document fibromyalgia symptoms to deem it a severe impairment (R. at 15; Docket No. 14, Pl. Memo. at 14). There was no documentation of pain in all quadrants or eleven of eighteen positive tender points (R. at 15). The RFC found Plaintiff could perform sedentary with restrictions on standing (R. at 18). Plaintiff complains that this RFC does not consider the limiting effects from her combined conditions (Docket No. 14, Pl. Memo. at 22).

21.  Plaintiff contends that the ALJ erred in making this finding at Step Two (id. at 12-13).

22.  On November 1, 2017, Dr. Michael Weingarten found Plaintiff had positive fibromyalgia trigger points and associated symptoms and conditions (R. at 301-03, 302; Docket No. 14, Pl. Memo. at 14-15). In July 2019, Dr. Weingarten repeated his fibromyalgia diagnosis (R. at 760; Docket No. 14, Pl. Memo. at 15).

23.  Defendant responds that Plaintiff failed to document widespread pain in four quadrants to support a fibromyalgia diagnosis (Docket No. 15, Def. Memo. at 8-9). Defendant notes that no treating or examining provider found at least eleven tender points that were bilateral and above and below the waist, to meet the symptoms for fibromyalgia (id. at 9).

24.  Review of the cited medical record does not reveal any source noting the number of tender points Plaintiff had. Dr. Weingarten, the first fibromyalgia diagnosis in this record, did not state the number of trigger or tender points on Plaintiff to conclude his

diagnosis. Instead, doctors and others repeat a diagnosis of fibromyalgia made in the past (e.g., R. at 295 (Jan. 31, 2018), 269 (May 9, 2018), 385, 390 (June 18, 2018), 760 (July 3, 2019)). Appointments in Rheumatology Consultants of WNY (Dr. Weingarten's practice) examined Plaintiff from June 2017 but the first diagnosis of fibromyalgia was in November 2017 (R. at 316-18, 304-05). If before Dr. Weingarten's November 2017 diagnosis, a prior diagnosis was not produced.

25. Plaintiff argues that the ALJ erred in not recontacting her treating providers to clarify the number of trigger points she had (Docket No. 14, Pl. Memo. at 16-17). Defendant counters that Plaintiff bears the burden of introducing evidence and that she has not identified medical evidence that is missing from this otherwise complete record (Docket No. 15, Def. Memo. at 11). The ALJ "may recontact" medical sources, Defendant argues that the ALJ is not required to do so (id., quoting 20 C.F.R. §§ 404.1520b(b)(2)(i), 416.920b(b)(2)(i) (emphasis added)).

26. The medical record here is complete, but the sources fail to note the number of trigger points Plaintiff had at examination or identify the initial diagnosis of fibromyalgia.

27. While Plaintiff has symptoms for fibromyalgia, there is no record discounting other causes for these symptoms, such as arthritis (as noted by the ALJ, R. at 15) or psychiatric issues (R. at 741; Docket No. 15, Def. Memo. at 10). For example, on May 2, 2018, Dr. Weingarten wrote to follow up on Plaintiff's fibromyalgia and osteoarthritis (R. at 293).

28. Thus, the ALJ did not err in not finding Plaintiff's fibromyalgia was a severe impairment at Step Two given that it was diagnosed pursuant to SSR 12-2p.

29. Plaintiff next argues that the ALJ improperly relied on objective findings to diminish the severity of her post-stroke headaches, weakness, fatigue, as well as cognitive, eye, and ear problems, and other conditions (Docket No. 14, Pl. Memo. at 20). Since fibromyalgia is not revealed in objective tests, Plaintiff contends that disregard of her complained symptoms also was in error (see id. at 21-22).

30. Plaintiff argues that the ALJ failed to consider (either individually or collectively) her chronic headaches, dizziness, stroke residuals, and mental health and failed to factor them into her RFC (Docket No. 14, Pl. Memo. at 20-24).

31. Plaintiff was treated for frequent and chronic migraine headaches (Docket No. 14, Pl. Memo. at 20, citing R. at 246-56, 249-50, 301, 357-58, 612).

32. She now argues that the ALJ failed to consider her headaches individually or with other conditions an improperly relied upon objective medical evidence to diminish the effects of her conditions (Docket No. 14, Pl. Memo. at 20). The ALJ also failed to account for the limiting effects of her headaches in the RFC (id. at 21).

33. The ALJ relied upon Plaintiff's activities of daily living to find that she was able to work despite her condition (R. at 19; Docket No. 14, Pl. Memo. at 22).

34. Defendant asserts that the ALJ properly found that Plaintiff's hearing loss, vision impairment, headaches, anxiety, depression, and other mental conditions were not severe impairments (Docket No. 15, Def. Memo. at 12-19). As for Plaintiff's headaches, Defendant points out that she did not report headaches of the severity or frequency that interferes with performance of work activities, thus appropriately found to be non-severe (id. at 15). The headaches were triggered and aggravated by stress (R. at 386, 394) and

Defendant argues the RFC required no more than one change per day (R. at 18; Docket No. 15, Def. Memo. at 16).

35.     Defendant also argues that the ALJ properly considered the totality of the evidence in assessing the RFC, including the impairments Plaintiff now complains were not considered (Docket No. 15, Def. Memo. at 19-26, 26-27).  Defendant reminds that Plaintiff bears the burden of proving her RFC is more restricted than found by the ALJ (id. at 18-19).

36.     The ALJ incorporated the nonsevere headaches and other conditions in the RFC, finding that Plaintiff could perform sedentary work, but could only tolerate a change per day (R. at 18).  Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is denied.

37.     Third, Plaintiff objects to the ALJ's consideration of the medical opinions in the evidence (Docket No. 14, Pl. Memo. at 24-30).  She argues that the conclusion that Plaintiff could perform sedentary work was based only upon the ALJ's lay opinion (id. at 24).  She accuses the ALJ with cherry picking from opinions to support his conclusion (id.).  Where the ALJ found some opinions partially persuasive, Plaintiff argues the ALJ did not sufficiently explain reasons for partial acceptance of those opinions (id. at 25).

38.     Under the Social Security standards after March 2017 for evaluating medical evidence, the agency considers the persuasiveness of a medical opinion, 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  The agency considers the supportability and consistency of the opinions as the most important factors, id. §§ 404.1520c(c)(1), (2), (b)(2), 416.920c(c)(1), (2), (b)(2).  The ALJ must explain his approach with respect to supportability and consistency when considering a medical opinion, Melissa F. v. Comm'r,

No. 20CV1363, 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021)(Carter, Mag. J.) (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)).  The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive the opinion will be, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The ALJ is not required to articulate how each medical opinion is considered, 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

39.	Plaintiff faults the ALJ's consideration of three medical opinion sources, Dr. Lee Guterman, Dr. Omar Kass-Hout, and physical therapist Philip Maniscalco.

40.	Neurosurgeon Dr. Lee Guterman reported on October 11, 2017, that he did not perform physical assessment of Plaintiff but deferred to physical and occupational therapists' assessments (R. at 244).  The doctor diagnosed Plaintiff with cerebral infarction due to thrombosis of the left vertebral artery, finding that her symptoms were frequently severe enough to interfere with her attention and concentration (R. at 245; Docket No. 14, Pl. Memo. at 5).

41.	The ALJ did not find this opinion persuasive because it was not supported by any explanation and was rendered in a check box form (R. at 23).  Further, the ALJ found this opinion was inconsistent with the overall record (R. at 23-24).

42.	Plaintiff argues the reasons stated by the ALJ are "improperly selective and conclusory" (Docket No. 14, Pl. Memo. at 28).  She states the ALJ erred in deeming the check box form less reliable than other forms, Ruiz v. Saul, No. 18CV6563, 2020 WL 1465859, at *4-5 (W.D.N.Y. Mar. 26, 2020) (Payson, Mag. J.), and he ALJ's rejection was conclusory (id.).

43. Defendant counters that the ALJ correctly weighed Dr. Guterman's check box form because it lacked any explanation (Docket No. 15, Def. Memo. at 28), see Halloran v. Barnhart, 362 F.3d 28, 31 n.2 (2d Cir. 2004) (standardized form only marginally useful for creating a meaningful and reviewable factual record)).

44. Cases within this Circuit (including from this Court, Sherry C. v. Comm'r, No. 20CV911, 2022 WL 860953 (W.D.N.Y. Mar. 23, 2022) (Skretny, J.); Cory S. v. Comm'r, No. 19CV6608, 2021 WL 508082, at *6 (W.D.N.Y. Feb. 11, 2021) (Skretny, J.)) differ on the acceptability of check box forms from treating physicians reporting their opinions. As this Court observed in Cory S., supra, 2021 WL 508082, at *6, and Sherry C., supra, 2022 WL 860953, at *6, and the cases cited therein, doctors may use those forms to express their opinions of a claimant's condition.

45. Reliance on such forms for medical opinions have been rejected, however, where the forms merely "offer little or nothing with regard to clinical findings and diagnostic results" or are inconsistent with findings in the doctor's own notes, Heaman v. Berryhill, 765 F. App'x 498, 501 (2d Cir. 2019) (summary Order); Halloran, supra, 362 F.3d at 31 n.2. In Halloran (under the pre-2017 evaluation standards), the ALJ's opinion denied benefits without possibly developing the administrative record and failed to apply the treating physician rule despite the check box form by a treating physician, 362 F.3d at 31-32.

46. Dr. Guterman only submitted his response to in the check box form, where he expressly stated that he relied on assessments by physical and occupational therapists and not his own (R. at 244). The ALJ observed that the therapists' records from 2017 (R. 474-608) (presumably the ones Dr. Guterman relied upon) showed Plaintiff

had general improvement and stabilization of her condition following her stroke (R. at 19). Thus, the ALJ did not err in the determining the persuasiveness of Dr. Guterman's assessment.

47.	Plaintiff objects to the ALJ finding Dr. Omar Kass-Hout's opinion to be "neither valuable nor persuasive in accordance with 20 C.F.R. 404.1520b(c) and 416.920b(c)" (R. at 24; Docket No. 14, Pl. Memo. at 27-28).

48.	Dr. Kass-Hout examined Plaintiff on August 2017 and concluded that Plaintiff was disabled, and she could have returned to work in October for four hours every two weeks (R. at 615; Docket No. 14, Pl. Memo. at 27).

49.	Defendant replies that Dr. Kass-Hout's statement addressed the ultimate issue reserved for the Commissioner in determining disability. Defendant agrees with the ALJ in finding this statement was neither valuable nor persuasive (Docket No. 15, Def. Memo. at 29). Under these regulations, the ALJ did not need to provide any analysis of that statement (id.), 20 C.F.R. §§ 404.1520b(c), 416.920b(c), although he did note Dr. Kass-Hout's finding that Plaintiff's gait and station were intact (R. at 615, 19).

50.	The ALJ properly found that Dr. Kass-Hout's findings were neither valuable nor persuasive because the doctor concluded Plaintiff's disability. Further, the finding of disability was from August to October 2017, when the doctor opined Plaintiff could work for four hours every two weeks without stating how long Plaintiff would be restricted.

51.	In 2019, physical therapist Philip Maniscalco found that Plaintiff was moderately limited in walking and standing but very limited in lifting, carrying, pushing, pulling, bending, and climbing stairs, as indicated on a medical examination for employability assessment, disability screening form (R. at 747, 22). But Maniscalco did

not note her need for a cane or other assistive device (R. at 745, 22). Maniscalco also found that Plaintiff was moderately limited in her ability to understand (R. at 747, 22).

52. The ALJ found Mr. Maniscalco's opinions to be partially persuasive, finding that they were not supported by significant explanation because they were rendered on a check box form (R. at 22-23). The ALJ also discounted the mental aspects of these opinions because Mr. Maniscalco only treated Plaintiff physically (R. at 22).

53. Unlike Dr. Guterman's opinion, Mr. Maniscalco had examination records from June 19, 24, 26, July 2, 3, 8, 10, and 15, 2019, included with the evaluation form (R. at 748-55). These physical therapy sessions support the physical conclusions Maniscalco rendered if not the mental aspects (despite one session in July noting that Plaintiff needed "some verbal cues to promote proper posturing when standing and sitting for prolonged periods of time" (R. at 754)).

54. That the ALJ only found Mr. Maniscalco's opinion partially persuasive does not render the RFC to lack substantial evidence.

55. In sum, the ALJ appropriately considered the medical opinions cited by Plaintiff. His Motion for Judgment on the Pleadings (Docket No. 14) for remand to reconsider these opinions is denied.

56. Since there was no error in the consideration of his fibromyalgia, nonsevere conditions, and medical opinions, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:    May 23, 2022
         Buffalo, New York

                                              s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                           United States District Judge